## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JEAN ROBERT NAVUIS SUGRIN,

      Petitioner,

v.                                  Case No. 5:22-cv-85-TPB-PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS; FLORIDA
ATTORNEY GENERAL,

      Respondents.

_____/

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Jean Robert Navuis Sugrin, a Florida prisoner, timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Upon consideration of the second amended petition (Doc. 7) and the response in opposition (Doc. 15), the Court denies the petition.[1] The Court further denies Sugrin's motion for an evidentiary hearing (Doc. 22) because the petition may be resolved based on the record. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a).

## Background[2]

On July 17, 2016, at around 2:00 a.m., Paola Gambini sat in her car outside a Wawa gas station in Lake County, Florida, when a man wearing a camouflage shirt wrapped around his face attempted to rob her with a pink firearm. (Doc. 16-1,

---

[1] Sugrin did not file a reply and his time to do so is expired. Therefore, the petition is ripe for review.
[2] This summary is based on the trial transcript, appellate briefs, and Lake County, Florida's records concerning Sugrin's underlying criminal proceedings of which this Court takes judicial notice. *See* Fed. R. Evid. 201(b)(2).

Ex. M, pp. 183–84.) Gambini tricked the robber into fleeing by telling him that a police officer was inside Wawa. (*Id.*, pp. 184–85.) The robber fled the parking lot in a silver Prius. (*Id.*, p. 185.) Nicholas Emmett witnessed the attempted robbery while sitting in his car in the Wawa parking lot. (*Id.*, p. 226.) Officers arrived at Wawa and reviewed surveillance video footage that depicted the silver Prius entering the parking lot at 2:03 a.m. and departing two minutes later but did not depict the robbery. (*Id.*, pp. 177–78.) The footage did not depict the driver or license plate number. (*Id.*)

Officers issued a "be on the lookout" for someone matching the robber's description. (*Id.*, p. 178.) Orange County Sheriff's Office officials spotted the silver Prius driving from Lake County into Orange County and engaged their emergency lights. (*Id.*, p. 239.) The driver attempted to flee and crashed the Prius after a short chase. (*Id.*, pp. 239–40.) Sugrin emerged from the driver's side of the car with a pink firearm falling out of his right pocket. (*Id.*, pp. 241, 256.) Officers also found a camouflage shirt in the car. (*Id.*, p. 242.) There were no other occupants in the car. (*Id.*) Sugrin claims he found the Prius, a stolen vehicle. (*Id.*, p. 273.) Officers brought Gambini to the crash scene where she identified Sugrin and the Prius. (*Id.*, pp. 189–90, 216–17.)

After the crash, Sugrin was arrested in Orange County for multiple offenses he committed on a crime spree across Orange County and Lake County. (*Id.*, Ex. W, p. 407.) On July 18, 2016, the Lake County Court issued an arrest warrant finding there was probable cause to believe that Sugrin attempted to rob Gambini in Lake

County during the crime spree. Case No. 35-2016-CF-001822-AXXX-XX (Lake Cty., Fl.) (Criminal Case Docs. 1, 2.) On July 31, 2017, Sugrin was tried in Orange County for multiple offenses committed in Orange County during the crime spree. (Doc. 16-1, Ex. W, p. 407.) While Sugrin was held and tried in Orange County, there was no activity in his Lake County case. (*See* Criminal Case.)

On December 8, 2017, Sugrin filed a speedy trial demand in his Lake County case. (Doc. 16-1, Ex. A.) On December 27, 2017, while serving his Orange County sentence at Jackson Correctional Institution, Sugrin was transferred to the Lake County jail to stand trial in his Lake County case. (*Id.*, Ex. B, pp. 8–9.) On December 28, 2017, the Lake County Court appointed counsel for Sugrin at his first appearance. (*Id.*, p. 10); (Criminal Case Docs. 12, 13.) On January 19, 2018, Sugrin was charged by information in his Lake County Case with attempted robbery in possession of a firearm while masked. (Doc. 16-1, Ex. D, p. 16.)

On February 14, 2018, Sugrin's trial counsel moved for a continuance and waived Sugrin's right to a speedy trial. (*Id.*, Ex. E.) On May 17, 2018, Sugrin filed a motion to dismiss his counsel, but withdrew the motion on June 7, 2018. (*Id.*, Exs. F, G.) On July 3, 2018, Sugrin filed a *pro se* demand for a speedy trial and a waiver of his right to counsel. (*Id.*, Exs. H, I.) On July 31, 2018, the trial court held a *Faretta* hearing regarding Sugrin's *pro se* filings.[3] (*Id.*, Ex. K.) Sugrin asserted two bases for dismissing his trial counsel: (1) counsel did not schedule Sugrin's trial and

---

[3] A *Faretta* hearing is conducted by a court to determine if a defendant, who wants to represent themselves, understands the risks of self-representation. *See Faretta v. California*, 422 U.S. 806 (1975).

(2) counsel did not provide Sugrin with copies of deposition transcripts for Sugrin to prepare for trial. (*Id.*, pp. 38–39.) The trial court noted that the trial was scheduled for August 13, 2018. (*Id.*, pp. 38–40.) Trial counsel testified that he reviewed the deposition contents with Sugrin, and he ordered transcripts that Sugrin would receive once they arrived. (*Id.*, p. 39.) The trial court found Sugrin's concerns were all addressed and there was no cause to believe that trial counsel rendered ineffective assistance. (*Id.*, p. 40.) Notwithstanding this finding, Sugrin asked to represent himself. (*Id.*) The trial court allowed Sugrin to represent himself. (*Id.*, p. 51.)

On August 21, 2018, a state court jury convicted Sugrin of one count of attempted robbery in possession of a firearm while masked. (*Id.*, Ex. N.) The trial court sentenced Sugrin to twenty-years' imprisonment to run concurrent to his Orange County sentence. (*Id.*, Ex. P, pp. 353, 356.) The trial court vacated the sentence after realizing it did not offer to reappoint counsel for Sugrin at sentencing. (*Id.*, Ex. Q, pp. 360–62.) The trial court appointed counsel,[4] and resentenced Sugrin to twenty-years' imprisonment adding the ten-year minimum required by Fla. Stat. § 775.087(2)(a)(1), but the trial court did not state whether the sentence ran concurrent to Sugrin's Orange County sentence. (*Id.*, pp. 361–62; Ex. S, p. 376; Ex. T, pp. 382, 385.) Because the trial court did not address whether the sentences ran concurrent or consecutive, they automatically ran consecutive under Fla. Stat. § 921.16(1).

---

[4] The public defender who previously represented Sugrin was appointed to represent him at sentencing.

Appellate counsel filed an *Anders* brief on Sugrin's behalf arguing that the waiver of his right to counsel was not knowing or voluntary.[5] (*Id.*, Ex. U.) Sugrin filed a *pro se* appellate brief asserting additional claims. (*Id.*, Ex. W.) Among the many claims asserted in Sugrin's *pro se* brief, the appellate court found one potentially meritorious claim and instructed appellate counsel to brief the issue. (*Id.*, Ex. Y.) Appellate counsel submitted a brief arguing that the trial court erred when it resentenced Sugrin in the Lake County case to a sentence that ran consecutive to his Orange County case rather than concurrent. (*Id.*, Ex. Z, p. 478.) Appellate counsel raised the same argument in a Florida Rule of Criminal Procedure 3.800 motion. (*Id.*, Ex. AA, pp. 484–86.) The postconviction court granted the Rule 3.800 motion and amended Sugrin's Lake County sentence to run concurrent to his Orange County sentence. (*Id.*, p. 488.) The appellate court *per curiam* affirmed the sentence. (*Id.*, Ex. CC); *Surgrin v. State*, 291 So. 3d 586 (Fla. 5th DCA 2020).

Sugrin petitioned for a writ of habeas corpus under Florida Rule of Appellate Procedure 9.141. (Doc. 16-1, Ex. EE.) The appellate court denied the petition. (*Id.*, Ex. LL.) Sugrin moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. MM, OO, QQ.) The postconviction court denied the motion. (*Id.*, Ex. RR.) Sugrin appealed and the appellate court *per curiam* affirmed. (*Id.*, Exs. SS, UU.) Sugrin filed a notice of intent to invoke the Florida Supreme

---

[5] An *Anders* brief is filed by counsel when their client wishes to appeal but they believe the appeal is wholly frivolous. *See Anders v. California*, 386 U.S. 738, 744 (1967).

Court's discretionary jurisdiction that the Florida Supreme Court dismissed. (*Id.*, Exs. WW, XX.)

Sugrin now petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254 and asserts five grounds of ineffective assistance of counsel, ineffective assistance of appellate counsel, and trial court error. (Doc. 7.)

## Standards of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act governs this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if an applicant is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state

court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner[']s factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even when a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

**Ineffective Assistance Of Counsel**

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

A petitioner must also show that their counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Claims for ineffective assistance of appellate counsel are also governed by *Strickland*, and thus to prevail, a petitioner must establish that their appellate

counsel's performance was deficient and but for counsel's performance, they would have prevailed on appeal. *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1331 (11th Cir. 2016) (citing *Strickland*, 466 U.S. at 687; *Brooks v Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013)); *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

## Discussion

**Ground One**

Sugrin contends that his trial counsel was ineffective for failing to secure his right to a speedy trial. (Doc. 7 at 3.) Respondents argue that Sugrin was not entitled to a speedy trial because his counsel was still preparing until the trial began.[6] (Doc. 15, p. 20.) Sugrin asserted this claim in his amended Rule 3.851 motion. (Doc. 16-1, Ex. QQ, pp. 700–04.) The postconviction court applied *Strickland* and denied the motion finding Sugrin's trial counsel could not be ineffective for waiving Sugrin's right to a speedy trial when he required more time to prepare. (*Id.*, Ex. RR, p. 759.) When addressing Sugrin's argument that he would have been sentenced as a youthful offender under Fla. Stat. § 958.04 if trial counsel secured his right to a

---

[6] Respondents also argue that Sugrin procedurally defaulted this claim by failing to raise it before his appeal. (Doc. 15, pp. 11–13.) Sugrin asserts a claim of ineffective assistance of counsel that was properly raised for the first time on state habeas review in his Rule 3.850 motion. (Doc. 16-1, Ex. QQ, pp. 700–04; Ex. SS, pp. 834–37; *see Castille v. Peoples*, 489 U.S. 346, 351 (1989) (exhaustion requires a petitioner to "fairly present[]" the issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review (emphasis omitted)); *see also Hills v. State*, 78 So. 3d 648, 652 (Fla. 4th DCA 2012) (claims of ineffective assistance of counsel are "properly made in a motion for post-conviction relief under Rule 3.850"). Furthermore, Sugrin raised the underlying issue—his right to a speedy trial—before his appeal when he filed a *pro se* demand for speedy trial and raised the issue during his *Faretta* hearing. (Doc. 16-1, Ex. H; Ex. K, pp. 38–39.)

speedy trial,[7] the postconviction court found Sugrin could not demonstrate prejudice because the trial court considered his age when it sentenced him.[8] (*Id.*, p. 760.) The appellate court *per curiam* affirmed the postconviction court's findings. (*Id.*, Ex. UU.)

To determine whether the State violated a criminal defendant's right to a speedy trial, courts first ask "if the length of the delay has been long enough" "to trigger a full-fledged constitutional analysis." *United States v. Vargas*, 97 F.4th 1277, 1285 (11th Cir. 2024), *cert. denied*, No. 24-5230, 2024 WL 4427453 (U.S. Oct. 7, 2024) (citations omitted). The delay should "approach a year" to "trigger the speedy trial analysis." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018); *Turner v. Estelle*, 515 F.2d 853, 855–56 (5th Cir. 1975)). "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and

---

[7] Under Florida law, trial courts may apply sentencing alternatives to defendants between eighteen and twenty-one years old "to improve the chances of correction and successful return to the community." Fla. Stat. §§ 958.021, 958.04.

[8] The postconviction court also found that Sugrin was not prejudiced because the operative date for determining whether a defendant can be sentenced as a youthful offender under § 958.04 is the date on which the defendant committed the crime, not the date on which the defendant is sentenced. (Doc. 16-1, Ex. RR, p. 760.) The postconviction court incorrectly applied the version of § 958.04 in effect at the time of its ruling rather than the version in effect when Sugrin was sentenced. During the postconviction proceedings, the relevant date for determining youthful offender status was the date the crime was committed, not the date the sentence was imposed. *See* Fla. Stat. § 958.04(1)(b) (effective October 1, 2019). This version of § 958.04 went into effect after Sugrin was sentenced. *See id.* During Sugrin's sentencing, the operative date for determining youthful offender status under § 958.04 was the sentencing date. *See* Fla. Stat. § 958.04 (1)(b) (effective October 1, 2008, to September 30, 2019). The trial court sentenced Sugrin one month and eleven days after his twenty-first birthday and he was therefore not eligible for youthful offender status. (Doc. 16-1, Ex. S, p. 371.) Although the state postconviction court applied the incorrect version of the statute, its ultimate determination that Sugrin was not prejudiced was reasonable because the application of § 958.04 is discretionary and the trial court considered Sugrin's age when sentencing him notwithstanding the operative date of § 958.04. *See Knowles*, 556 U.S. at 123 (quoting *Schriro*, 550 U.S. at 473) (a federal habeas court may defer to an incorrect state court determination if that determination was reasonable).

continues until the date of trial." *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982) (citation omitted*); United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) ("the delay with which we are concerned is that between the date of the indictment and the trial date[]" (citing *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997)).

Sugrin argues that he was deprived of his right to a speedy trial in his Lake County case because the Lake County information was filed a year and a half after his arrest in Orange County. (Doc. 7, pp. 18, 21–23.) Sugrin misunderstands the application of his right. Although Sugrin was arrested on July 17, 2016, in Orange County, he was not arrested in Lake County until December 27, 2017, when he was transferred from Jackson Correctional Institution to the Lake County Jail. (Doc. 16-1, Ex. B, pp. 8–9.) Sugrin was not charged by information in Lake County until January 19, 2018, and his trial began on August 20, 2018. (*Id.*, Ex. D, p. 16; Ex. M, p. 58.) Accordingly, the speedy trial period ran from, at the earliest, the time Lake County arrested Sugrin on December 27, 2017, until his trial began on August 20, 2018, a period of less than eight months.

Further, once Sugrin was arrested in Lake County, the State did not cause any delay in scheduling the trial, but rather, Sugrin's counsel continued the trial to further prepare Sugrin's defense. (*Id.*, Ex. E.) A delay caused by Sugrin's counsel is treated as if caused by Sugrin himself. *See Vermont v. Brillon*, 556 U.S. 81, 92 (2009). Sugrin cannot claim he was denied his right to a speedy trial when he caused the delay. *See id.* ("counsel's failure 'to move the case forward' does not

warrant attribution of [a] delay to the State[]"). Because the State did not deprive Sugrin of his right to a speedy trial, Sugrin's trial counsel could not have been unreasonable for failing to raise this meritless issue in the underlying proceedings. *See Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 755 (11th Cir. 2011) ("[c]ounsel cannot be labeled ineffective for failing to raise issues which have no merit" (quoting *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990)).

To the extent that Sugrin claims his counsel's performance was unreasonable because he delayed the trial, "an attorney, acting without consent from his client, may waive his client's right to a speedy trial because '[s]cheduling matters are plainly among those [decisions] for which agreement by counsel generally controls.'" *Fayson v. Sec'y, Fla. Dep't of Corr.*, 568 F. App'x 771, 773 (11th Cir. 2014) (quoting *New York v. Hill*, 528 U.S. 110, 115 (2000)). In addition, it was reasonable for Sugrin's trial counsel to continue the trial when he was unprepared to proceed. *See Fayson*, 568 F. App'x at 774 ("counsel's decision to move for a continuance was not objectively unreasonable under the circumstances because" more discovery was required to prepare for trial); *see also Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) ("Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."). Consequently, Sugrin does not show that his trial counsel performed deficiently.

Even if Sugrin could show trial counsel's deficient performance, he does not allege that he was prejudiced by trial counsel's failure to "secure his right." To the

extent that Sugrin wishes to revive the argument that the delayed trial resulted in him not being sentenced as a youthful offender, this argument fails. Even if Sugrin was under twenty-one when he was sentenced, youthful offender status is not an entitlement. Under Fla. Stat. § 958.04, Florida sentencing courts have "the discretion to sentence eligible defendants who are under [twenty-one] years of age as 'youthful offender[s].'" *United States v. Cortes*, 427 F. App'x 803, 806–07 (11th Cir. 2011). During resentencing, the trial court considered Sugrin's age, but found "that a departure sentence [was] not the best sentence in this case" because Sugrin posed a "danger to the community." (Doc. 16-1, Ex. S, p. 375.) Accordingly, Sugrin does not establish a reasonable probability that he would have been sentenced as a youthful offender if his counsel went to trial when he was still twenty years old.

Sugrin fails to show that his counsel rendered ineffective assistance and thus fails to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Therefore, Sugrin is not entitled to relief on Ground One.

**Ground Two**

Sugrin contends that his trial counsel was ineffective for failing to move for youthful offender status during sentencing and for failing to seek a sentence concurrent and coterminous with Sugrin's Orange County sentence. (Doc. 7, pp. 7, 24–27.) Respondents argue that Sugrin cannot demonstrate prejudice because trial counsel argued for a downward sentence departure based on his age, and there is no

indication that the trial court would have awarded a sentence equal to his Orange
County sentence if counsel argued for one. (Doc. 15, pp. 24–25.)

Beginning with the youthful offender argument that Sugrin first asserted in
his amended Rule 3.851 motion. (Doc. 16-1, Ex. QQ, pp. 712–14.) The postconviction
court applied *Strickland* and denied the motion finding Sugrin was not entitled to
youthful offender status because it is discretionary and finding the trial court
considered Sugrin's age when sentencing him. (*Id.*, Ex. RR, pp. 761–62.)

This claim fails for two reasons. First, Sugrin was outside the youthful
offender statute when he was sentenced, and trial counsel cannot be unreasonable
for failing to raise a meritless argument. *See* Fla. Stat. § 958.04 (1)(b) (effective
October 1, 2008, to September 30, 2019); *see also Cave*, 638 F.3d at 755 (quoting
*Card*, 911 F.2d at 1520). Second, Sugrin cannot show prejudice. Although trial
counsel noted for the trial court that Sugrin did not qualify for youthful offender
status, he argued for a lower sentence of the mandatory ten-year minimum based
on Sugrin's age, drug use, mental health issues, and family issues.[9] (Doc. 16-1,
Ex. S, pp. 371–73.) The trial court considered Sugrin's age, Sugrin's mental health
issues, Sugrin's life and family circumstances, the nature of the crime, and the
evidence presented at trial. (*Id.*, p. 375.) The trial court concluded that a downward
departure was not appropriate because of the danger Sugrin posed to the
community. (*Id.*, pp. 375–76.) Because granting youthful offender status is

---

[9] During resentencing counsel stated: "the incident took place on or about July 17, 2016. I say that
because I'd like to point out that on July 17, 2016, this kid was nineteen years old." (Doc. 16-1, Ex. S,
p. 370.)

discretionary and the trial court considered Sugrin's age during sentencing, Sugrin cannot show that he was prejudiced.

Moving to the concurrent sentence argument. In his *pro se* appellate brief Sugrin argued that his appellate counsel was ineffective for failing to file a Rule 3.850 motion raising the trial court's error in failing to run his Lake County sentence concurrent to his Orange County sentence. (*Id.*, Ex. W, pp. 461–62.) The appellate court instructed Sugrin's appellate counsel to brief the issue of why Sugrin "was originally sentenced concurrent with all of his other cases[] but [was] resentenced to a prison term not pronounced concurrent with any other cases." (*Id.*, Ex. Y.) Appellate counsel submitted an appellate brief and a Rule 3.800 motion addressing the issue as a claim of trial court error. (*Id.*, Ex. Z; Ex. AA, pp. 484–86.) The postconviction court granted the Rule 3.800 motion and amended Sugrin's Lake County sentence to run concurrent to his Orange County sentence. (*Id.*, Ex. AA, p. 488.) The appellate court affirmed. (*Id.*, Ex. CC); *Surgrin*, 291 So. 3d 586.

In Sugrin's Rule 3.851 motion he later argued that his trial counsel was ineffective for failing to seek a concurrent and coterminous sentence. (Doc. 16-1, Ex. QQ, p. 712.) The postconviction court applied *Strickland* and denied the motion finding:

> Defendant contends that had his attorney argued for coterminous sentencing with the sentenced passed in Orange County that the trial court would likely have sentenced the Defendant to four (4) years D.O.C. and two (2) years of probation and enrollment with the JobCore Program. However, as noted above, the trial court, after a review of the record, found no reason for a downward departure and that even if there had been such, it would not have been applied in the instant matter. See Exhibit "C" at 9, Lines 21-24. Defendant's argument that

such a plea would even have been offered had his counsel made such an argument is conclusory in nature and the Defendant does not show prejudice in the record.

(*Id.*, Ex. RR, pp. 762–63.)

Regardless of whether Sugrin's trial counsel provided reasonably competent assistance,[10] Sugrin cannot show prejudice for counsel's failure to raise this issue. The postconviction court granted Sugrin's Rule 3.800 motion and his Lake County sentence is running concurrent to his Orange County sentence. In addition, the Lake County trial court found Sugrin was not entitled to a downward departure because he posed a danger to the community. There is nothing in the record to demonstrate that trial counsel's request for a coterminous sentence would have changed the trial court's finding or resulted in a shorter sentence equal to his Orange County sentence of four years' imprisonment followed by two years' probation. Sugrin's argument is further undercut by the fact that his Lake County charge carried a mandatory minimum of ten years from which the trial court had no discretion to depart. *See* Fla. Stat. § 775.087(2)(a)(1).

Sugrin fails to show that his counsel rendered ineffective assistance and thus fails to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Therefore, Sugrin is not entitled to relief on Ground Two.

---

[10] A court need not "address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**Ground Three**

Sugrin argues that his trial counsel was ineffective for failing to protect him against double jeopardy. (Doc. 7, p. 8.) Sugrin claims that when the trial court resentenced him to twenty years and added a ten-year mandatory minimum, it violated his right to be free from double jeopardy. (*Id.*) Respondents argue that Sugrin's resentencing does not amount to double jeopardy because Sugrin's first sentence was not yet final when the trial court vacated it, and the original sentence was illegal because it was shorter than required by law. (Doc. 15, pp. 26–27.)

Sugrin raised this argument in his Rule 3.851 motion. (Doc. 16-1, Ex. QQ, pp. 730–32.) The postconviction court applied *Strickland* and denied the motion finding:

> Imposition of a minimum mandatory sentence for the first time at a resentencing hearing does not violate double jeopardy. In *Dunbar v. State*, 89 So. 3d 901 (Fla. 2012), the trial court initially pronounced a sentence it had no discretion to impose, realized its error later that day, and added the nondiscretionary mandatory minimum terms to the sentence. The Florida Supreme Court in *Dunbar* held that the trial court did not violate double jeopardy principles in adding the mandatory minimum term to defendant's sentence on the same day as oral pronouncement. *Id.* at 906-907. "When a trial court fails to pronounce nondiscretionary sentencing terms, the defendant has no legitimate expectation in the finality of that sentence, at least until the reviewing court has issued a mandate or the time for filing an appeal has run." *Id.* at 906.
>
> Based on the above, this Court finds Defendant's allegations that counsel was ineffective for failing to protect against double jeopardy are without merit.

(*Id.*, Ex. RR, pp. 769–70.)

"The Double Jeopardy Clause affords the defendant three basic protections[:]"
(1) protection "against a second prosecution for the same offense after acquittal,"
(2) protection "against a second prosecution for the same offense after conviction,
and" (3) protection "against multiple punishments for the same offense." *Jones v.
Thomas*, 491 U.S. 376, 380 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717
(1969). The multiple punishment prohibition may be violated when a court vacates
a defendant's sentence during resentencing and imposes a harsher punishment.
*United States v. Cochran*, 883 F.2d 1012, 1016–17 (11th Cir. 1989) (citing *Pearce*,
395 U.S. at 723). "Resentencing violates the [D]ouble [J]eopardy [C]lause only when
it disrupts the defendant's legitimate expectations of finality." *United States v.
Young*, 953 F.2d 1288, 1291 n.3 (11th Cir. 1992); *Cochran*, 883 F.2d at 1016 ("the
double jeopardy inquiry turns on the extent and legitimacy of a defendant's
'expectation of finality in the original sentence'" (citations omitted)). "[A]ny
expectation of finality in a sentence is wholly absent where[] . . . the defendant
requests that his prior sentences be nullified." *Cochran*, 883 F.2d at 1017.

On August 23, 2018, Sugrin was sentenced to twenty years' imprisonment.
(Doc. 16-1, Ex. P, pp. 353, 356.) On September 4, 2018, Sugrin appeared in front of
the trial court, and the court noted that it did not offer to reappoint counsel to
Sugrin before it sentenced him.[11] (*Id.*, Ex. Q, pp. 360–61.) The trial court asked
Sugrin: "do you wish me to appoint counsel to represent you for sentencing?" (*Id.*,

---

[11] The hearing transcript and the Lake County docket do not provide any clarity on why Sugrin was
in front of the trial court on this day—whether by Sugrin's request, his former counsel's request, or
the trial court's own volition. (Doc. 16-1, Ex. Q, pp. 360–62); (*See* Criminal Case Doc. 175–97.)

p. 361.) Sugrin replied: "yes, your Honor." (*Id.*) The trial court then set aside and vacated Sugrin's sentence and appointed counsel for a resentencing hearing. (*Id.*) On November 29, 2018, at a resentencing hearing, the trial court resentenced Sugrin to twenty-years' imprisonment and added the ten-year minimum required by Fla. Stat. § 775.087(2)(a)(1). (*Id.*, Ex. S, p. 376.)

Sugrin did not have an expectation of finality in his sentence because he requested the trial court to appoint counsel to represent him for resentencing. *See Cochran*, 883 F.2d at 1017 ("the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice[]" (citations omitted)); *Mincey v. McNeil*, No. 806-CV-264-T-30TBM, 2008 WL 2694112, at *5 (M.D. Fla. July 7, 2008) ("Because the [p]etitioner requested that the court correct his sentence, he had no reason to expect the sentence was final, and his double jeopardy claim is thus without merit."). Accordingly, trial counsel's failure to argue that including the mandatory minimum on resentencing violated Sugrin's right against double jeopardy was not unreasonable.

Even if Sugrin could demonstrate his trial counsel's unreasonable representation, he does not demonstrate a reasonable probability that the result of the proceedings would have been different if his trial counsel argued against imposing the mandatory minimum. Under Florida law, "[w]hen a trial court fails to pronounce nondiscretionary sentencing terms, the defendant has no legitimate expectation in the finality of that sentence, at least until the reviewing court has

issued a mandate or the time for filing an appeal has run." *See Dunbar v. State*, 89 So. 3d 901, 906 (Fla. 2012). The trial court did not have the discretion to impose Sugrin's original sentence because it did not include the mandatory minimum required by Fla. Stat. § 775.087(2)(a)(1). In addition, Sugrin's initial sentence was vacated before the trial court issued a mandate and before Sugrin's time to appeal expired. *See* Fla. R. App. P. 9.140 (b)(3) (a criminal defendant has thirty days to appeal a sentence). Consequently, if trial counsel argued that the mandatory minimum imposed on resentencing violated Sugrin's right against double jeopardy, the argument likely would have been rejected, and Sugrin cannot demonstrate prejudice for counsel's failure to raise the issue. *See Moss v. Sec'y, Fla. Dep't of Corr.*, No. 3:19-CV-881-MMH-JBT, 2022 WL 1321149, at *12 (M.D. Fla. May 3, 2022) (finding a trial court did not violate a defendant's right against double jeopardy when it resentenced the defendant to include a mandatory minimum before "the expiration of the time to file an appeal." (citing *Dunbar*, 89 So. 3d at 906)).

Sugrin fails to show that his counsel rendered ineffective assistance and thus fails to show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Therefore, Sugrin is not entitled to relief on Ground Three.

**Ground Four**

Sugrin contends that his appellate counsel was ineffective for failing to raise, on appeal, that the evidence against him was insufficient to convict him. (Doc. 7,

p. 10.) Respondents argue that Sugrin raised this issue in his *pro se* brief on direct appeal and therefore he cannot demonstrate prejudice by appellate counsel's failure to raise it in the *Anders* brief. (Doc. 15, p. 30.)

On appeal, Sugrin's appellate counsel filed an *Anders* brief that raised one ground. (Doc. 16-1, Ex. U.) However, Sugrin subsequently filed a *pro se* appellate brief in which he asserted the claim that the evidence against him was insufficient. (*Id.*, Ex. W, p. 409.) Although the appellate court did not directly discuss the merits of the insufficient evidence claim, it did not instruct Sugrin's counsel to brief the issue. (*Id.*, Ex. Y.) In his Rule 9.141 petition, Sugrin argued that his appellate counsel was ineffective for failing to argue that the evidence against him was insufficient. (*Id.*, Ex. EE, pp. 535–44.) The postconviction court denied the petition without a written opinion. (*Id.*, Ex. LL.)

Sugrin cannot show that his appellate counsel was unreasonable for failing to raise this issue on appeal because there was sufficient evidence to convict him. During the trial, the State called eight witnesses, including Gambini and Emmett. Both Gambini and Emmett identified the pink firearm and camouflage shirt recovered from the crash scene, as the firearm and face covering the robber used. (*Id.*, Ex. M, pp. 191–94, 197, 228–30.) Gambini also identified Sugrin as matching her observations of the robber's physical appearance—black, skinny, and average height—and identified the Prius as the car in which the robber fled Wawa. (*Id.*, pp. 194–96, 202–03, 189–90, 216–18.) After the State rested its case, Sugrin moved for a judgment of acquittal arguing that the evidence against him was

insufficient to convict him. (*Id.*, pp. 325–28.) The trial court denied the motion finding that there was both sufficient circumstantial evidence and direct evidence to support a guilty verdict. (*Id.*, pp. 274, 328.)

Sugrin takes issue with the lack of direct evidence against him. (Doc. 7, p. 10.) Under federal law circumstantial evidence "is intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121, 139–40 (1954); *United States v. Henderson*, 693 F.2d 1028, 1030 (11th Cir. 1982) ("Circumstantial evidence can be and frequently is more than sufficient to establish guilt beyond a reasonable doubt" (citing *United States v. Hinds*, 662 F.2d 362, 367 (5th Cir. 1981))). The only distinction between the two types of evidence is that circumstantial evidence requires the jury to decide "whether to draw the inference or connection between the evidence presented and the fact asserted." *Henderson*, 693 F.2d at 1031.

Here the evidence was circumstantial as the witnesses and surveillance video footage did not observe the robber's face. To find Sugrin guilty, the jury was required to draw the inference that Sugrin robbed Gambini because he was found alone in the stolen Prius in which the robber fled Wawa, and in possession of the— very distinctive—pink firearm and camouflage shirt that the robber used. The jury ultimately concluded Sugrin was guilty and did so reasonably as there was sufficient evidence from which it could draw that inference. *See Jackson v. State*, 296 So. 3d 549, 552 (Fla. 1st DCA 2020) (the State's circumstantial evidence was sufficient to establish the appellant's identity as the robber when it showed: the

robber and appellant wore the same distinctive clothing; appellant closely resembled the robber's description; appellant's home was near the robbery site; appellant left his home in the morning and ran back seventeen minutes later after the robbery occurred; a K-9 tracked the robber's path to the appellant's home; appellant was found hiding in his closet and refused consent to search his bedroom; and appellant's brother worked at the robbery location and knew where cash was kept); *Meeks v. State*, 247 So. 3d 700, 705 (Fla. 1st DCA 2018) ("the following provides 'substantial, competent evidence to support the jury verdict[:]'" the appellant was found in the victim's stolen car shortly after the robbery and after leading police on a high-speed chase; appellant was in possession of the gun used during the robbery; and a witness identified appellant as the person in the video of the robbery); *but see Williams v. State*, 767 So. 2d 601, 602 (Fla. 4th DCA 2000) (testimony by the defendant's friend that they saw someone walking away from the robbery site and towards defendant's home who was "short and stubby" like the defendant and wore similar shoes to defendant, and testimony that the defendant said the robbery site was a "good hit," was not enough to support a conviction of attempted robbery when the victim gave a different description of the robber). The State presented sufficient evidence to support a guilty verdict and Sugrin did not present any witnesses or evidence to rebut the State's evidence, other than his own testimony during which he claimed he found the Prius and was in the wrong place at the wrong time, fleeing from the police. (Doc. 16-1, Ex. M, pp. 274, 276–77, 281, 283.)

Sugrin also takes issue with the fact that the finger-print analysis on the pink firearm and DNA analysis on the camouflage shirt came back as "not identified." (Doc. 7, p. 10.) The expert witness who testified regarding this evidence noted that it is not unusual for fingerprint or DNA evidence to come back as "not identified." (Doc. 16-1, Ex. M, p. 271.) This is not a case in which fingerprint or DNA evidence matched another person, instead the evidence came back as not identifying anyone. (*Id.*, pp. 268–71.) The lack of fingerprint or DNA evidence does not demonstrate Sugrin's innocence or guilt. There is no constitutional requirement that a conviction be supported by fingerprint or DNA evidence. Because there was sufficient evidence to convict Sugrin, his appellate counsel was not unreasonable for failing to raise this meritless argument on appeal. *see Cave*, 638 F.3d at 755 (quoting *Card*, 911 F.2d at 1520).

Even if Sugrin could show his appellate counsel's deficient performance, he cannot show prejudice for counsel's failure to argue that there was insufficient evidence to convict him because he raised the issue in his *pro se* appellate brief and gave the appellate court the opportunity to consider it. Thus, even if counsel raised this issue on appeal, Sugrin does not demonstrate a reasonable probability that the result would have been different.

Sugrin fails to show that his counsel rendered ineffective assistance and thus fails to show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Therefore, Sugrin is not entitled to relief on Ground Four.

**Ground Five**

Sugrin contends that the trial court erroneously handled a jury question. (Doc. 7, p. 12.) Respondents argue that this is an issue of state law not cognizable on federal habeas review. (Doc. 15, p. 10.) Sugrin asserted this argument in his *pro se* appellate brief. (Doc. 16-1, Ex. W, pp. 450–52.) Although the appellate court did not directly discuss the merits of this claim, it did not instruct Sugrin's appellate counsel to brief the issue. (*Id.*, Ex. Y.) Sugrin did not raise this issue in the postconviction proceedings.[12]

"A jury instruction that 'was allegedly incorrect under state law is not a basis for habeas relief[.]'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). "[T]o grant habeas relief based on constitutional trial error, the federal habeas court must find" that "the error had [a] substantial and injurious effect or influence in determining the jury's verdict." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1111 (11th Cir. 2012) (citations and quotations omitted); *Jamerson*, 410 F.3d at 690 ("Our inquiry [] is not whether the challenged instructions were 'undesirable, erroneous, or even universally condemned;' our inquiry is whether the instructions 'so infected the entire trial that the resulting conviction violates due process.'" (quoting *McGuire*, 502 U.S. at 72 (citation and quotation marks omitted)).

---

[12] Respondent does not argue that Sugrin failed to exhaust this claim. (Doc. 15, pp. 10–13.) Because Respondent does not raise this issue, and Sugrin's claim is meritless, this Court declines to determine whether he exhausted the claim when he only raised it in his *pro se* appellate brief. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (citing *Granberry v. Greer*, 481 U.S. 129, 131 (1987)) (Although a "court[] may [not] disregard a failure to exhaust and grant relief on the merits[,]" a court may deny "the petition on the merits without reaching the exhaustion question.").

Under Florida law, "[a] trial court need only answer questions of law, not of fact, presented by jurors during deliberations." *Green v. State*, 907 So. 2d 489, 498 (Fla. 2005) (citing *Coleman v. State*, 610 So. 2d 1283, 1286 (Fla. 1992); *Kelley v. State*, 486 So. 2d 578, 583 (Fla. 1986)). During jury deliberations, the jury asked the trial court if there were "any identifiable fingerprints on the victim's car door" or "on the [firearm's] magazine" (Doc. 16-1, Ex. M, p. 329.) This is a factual question concerning the ultimate determination the jury was called to make: whether Sugrin attempted to rob Gambini on July 17, 2016. *Compare Coleman*, 610 So. 2d at 1286 ("the jury's question regarding whether the vaginal swabs taken from the sexual battery victims matched the defendant's DNA" was a factual question), *with Green*, 907 So. 2d at 498 (a question clarifying a defendant's eligibility for parole was a question of law). The trial court responded by telling the jury that it could not instruct them on what evidence they heard, and they must rely on their recollections. (Doc. 16-1, pp. 329–30.)

Under Florida law, the trial court was within its discretion in advising the jury to rely on their recollections of the evidence. *See Coleman*, 610 So. 2d at 1286 (the trial court "did not abuse its discretion when [it] advised the jurors . . . to rely on their collective recollection of the evidence[]" "because the jury question involved matters of fact, not questions of law[]"); *Miller v. State*, 253 So. 3d 752, 755–56 (Fla. 1st DCA 2018) (the trial court did not err in refusing to answer a factual question—was there "any more discussion about [the] gun or BB gun on the collect [jail] call"—because it concerned the ultimate question of fact the jury was called to

decide: whether the evidence was sufficient to prove appellant possessed a firearm); *Frasilus v. State*, 46 So. 3d 1028, 1029 (Fla. 5th DCA 2010) (a trial court's response to a jury's factual question that the jury must use their "best recollection of the evidence" was not a fundamental error); *see also Green*, 907 So. 2d at 497 ("A trial court [has] discretion in answering or refusing to answer a jury's question."); *Perriman v. State*, 731 So. 2d 1243, 1247 (Fla. 1999) ("the trial court did not abuse its discretion in declining to give an additional instruction[]").

Similarly, the Eleventh Circuit has concluded "that a district court does not abuse its discretion by instructing the jury to rely on its collective memory[.]" *United States v. Frederick*, 608 F. App'x 744, 746 (11th Cir. 2015) (citing *United States v. Delgado*, 56 F.3d 1357, 1370 (11th Cir. 1995)); *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); *United States v. Bailey*, 830 F.2d 156, 157 (11th Cir. 1987) (the plaintiff's argument that a trial court erred by referring the jury to earlier jury instructions rather than directly responding to a list of questions was contrary to Eleventh Circuit precedent (citing *United States v. Parr*, 716 F.2d 796, 808–09 (11th Cir. 1983)).

Sugrin asserts that the trial court should have read back the pertinent portion of a witness's testimony that would have assisted and resolved the jury's question. (Doc. 7, p. 12.) Neither Florida nor Federal law requires a trial court to offer to read back portions of testimony in response to a jury's factual question, but rather, under both "[a] trial court's response to a jury's question is entrusted to its own sound discretion[.]" *See McDonald*, 935 F.2d at 1222 (citations omitted) ("we

cannot say on these facts that the district court abused its discretion in failing to read back selected portions of the transcript and instructing the jury instead to rely on its own collective memory[]"); *Frasilus*, 46 So. 3d at 1032 ("it is difficult to imagine circumstances under which a trial court's failure to advise the jury of its right to request a read-back could vitiate the fairness of the entire trial[]"); *see also Harris v. Sec'y, Fla. Dep't of Corr.*, 558 F. App'x 979, 983 (11th Cir. 2014) (denying a claim of ineffective assistance of counsel "for failing to object when the trial court denied the jury's request for a transcript"); *United States v. Pacchioli*, 718 F.3d 1294, 1306 (11th Cir. 2013) ("District courts have 'broad discretion in responding to a jury request that certain evidence be reread.'" (quoting *United States v. Alfonso*, 552 F.2d 605, 619 (5th Cir. 1977))).

The trial court did not violate Sugrin's rights when it answered the jury's question. Even if the trial court erroneously answered the jury's question, Sugrin does not demonstrate that the trial court's answer "infected the entire trial[.]" *See Jamerson*, 410 F.3d at 690 (quoting *Estelle*, 502 U.S. at 72). Therefore, Sugrin is not entitled to relief on Ground Five.

Accordingly, it is **ORDERED**, **ADJUDGED**, and **DECREED**:

1. Sugrin's second amended petition (Doc. 7) is **DENIED**. The Clerk is directed to enter judgment against Sugrin and to close this case.

2. Sugrin's motion for a hearing (Doc. 22) is **DENIED** as moot.

3. It is further **ORDERED** that Sugrin is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute

entitlement to appeal a district court's denial of his petition. 28 U.S.C.

§ 2253(c)(1). The district court or circuit court of appeals must first issue a

certificate of appealability. To obtain a certificate of appealability, Sugrin

must show that reasonable jurists would find debatable both (1) the

merits of the underlying claims and (2) the procedural issues he seeks to

raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484

(2000). Sugrin has not made the requisite showing. Accordingly, a

certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis*

is **DENIED**. Sugrin must obtain permission from the circuit court to

appeal *in forma pauperis*.

    **DONE** and **ORDERED** in Chambers, in Tampa, Florida, on January 22,

2025.


_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**